## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JENNIFER L. LAWSON,**

      **Plaintiff,**

**vs.**                         **Case No.  1:16cv322-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social**
**Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) filed pursuant to Title II of the Social Security Act (Act).  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On August 30, 2012, Plaintiff, Jennifer L. Lawson, filed an application for DIB alleging disability beginning June 17, 2012, based on problems with fibromyalgia, severe anxiety, pain, physical limitations, chronic fatigue, and joint, muscle, and nerve pain.  Tr. 89, 91, 170-71, 196, 199, 235, 267-72. (Citations to the record transcript/administrative record, ECF Nos. 9-10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)  Plaintiff's date last insured for DIB is December 31, 2017.  Tr. 20.

Plaintiff's application was denied initially on October 4, 2012, and upon reconsideration on December 18, 2012.  Tr. 20, 98, 113, 115-25.  On February 21, 2013, Plaintiff requested a hearing.  Tr. 20, 126-27.  On June 18, 2014, Administrative Law Judge (ALJ) K. Barlow held a video hearing and presided from Jacksonville, Florida, and Plaintiff appeared in Gainesville, Florida, and was represented by Martin J. Goldberg, an attorney.  Tr. 20, 38-75, 128-29.  Plaintiff testified during the hearing. Tr.  41-64, 74-75.  Melissa Tanner Brooks, an impartial vocational expert, testified during the hearing in Jacksonville, Florida.  Tr. 20, 65-70, 157-58 (Resume).  (Ms. Brooks is referred to as Ms. Tanner throughout the

hearing transcript, but Ms. Brooks in her Resume and in the ALJ's decision. Tr. 20, 38-40, 65, 70, 157-58.)

On September 5, 2014, the ALJ issued a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled from June 17, 2012, through the date of the decision.  Tr. 32.

On November 3, 2014, Plaintiff requested review of the ALJ's decision.  Tr. 15-16.  On November 7, 2014, counsel submitted a two-page brief, Exhibit 20-21E, and several medical records from Archer Family Health Care in October 2, 2014 (Exhibit 18F); Meridian Behavioral Healthcare dated March 16, 2014, to October 3, 2014 (Exhibit 19F); and University of Florida records dated November 25, 2014, to March 19, 2015 (Exhibit 20F).  Tr. 8, 12-13, 15-16, 291-92, 1807-66 (Exhibits 18F-20F); *see* Tr. 289-90 (June 11, 2014, Pre-Hearing Brief-Exhibit 20-21E).

On March 17, 2016, the Appeals Council considered the submitted evidence and denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.[1] Tr. 8-14; *see* 20 C.F.R. § 404.981.

---

[1]  Plaintiff does not challenge the Appeals Council's decision and consideration of the post-ALJ decision evidence submitted by Plaintiff.  ECF No. 20 at 8 n.5; *see* 20 C.F.R. § 404.900(b); *see also* Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1266 (11th Cir. 2016); Wilson v. Comm'r of Soc. Sec., 647 F. App'x 951, 952 (11th Cir. 2011) (unpublished).

On May 23, 2016, Plaintiff, pro se, advised the Appeals Council that she was under the impression that an appeal was being handled by her attorney, Mr. Goldberg, but that she had received a letter from Mr. Goldberg during the week of May 9, 2016, that he would no longer be representing her.  Plaintiff requested an extension of time to file an appeal.  Tr. 2-6.  On September 8, 2016, the Administrative Appeals Judge notified Plaintiff that her request for extension of time to file a civil action was granted for 30 days from the date she received the letter.  Tr. 1.

On October 13, 2016, Plaintiff, appearing pro se, filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 17 and 20, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2017."  Tr. 22.  "The claimant has not engaged in substantial gainful activity since June 17, 2012, the alleged onset date."  *Id.*

2. "The claimant has the following severe impairments: fibromyalgia, disorders of the spine, carpal tunnel syndrome and obesity."  *Id.* The ALJ determined that Plaintiff's medically determinable mental impairments of anxiety and depression were nonsevere.  *Id.*  The ALJ determined that Plaintiff had *mild* limitation in activities of daily

living, social functioning, and concentration, persistence, or pace, and *no* episodes of decompensation, which have been of extended duration.  Tr. 23.

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

4. "[T]he claimant has the residual functional capacity [RFC] to perform the sedentary work as defined in 20 CFR 404.1567(a) with no climbing ropes, scaffolds and ladders; occasional climbing of stairs and ramps; occasional stooping, crouching, crawling and kneeling; occasional pushing and pulling with the upper extremities; no exposure to concentrated temperature extremes, human environments, fumes, gases, poorly ventilated areas, workplace hazards or industrial noise.  She is limited to simple, routine tasks."  Tr. 24; *compare with* ¶ 8 and n.3 and 9 n.5 *infra*.

5. "The claimant is unable to perform any past relevant work" as a transcribing machine operator, nursery school attendant, unit clerk, or medical secretary, which were either skilled or semi-skilled jobs, ranging from sedentary exertion to heavy exertion as performed, with SVP's of 3 to 6.  Tr. 30.

6. The claimant was 37 years old, which is defined as a younger individual 18-44, on the alleged disability onset date.  *Id.*

7. "The claimant has at least a high school education and is able to communicate in English."  *Id.*

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 31.  Based on the vocational expert's testimony in response to the ALJ's hypothetical that included the ALJ's RFC determination, Tr. 67-68, the ALJ determined that Plaintiff could perform several jobs: Addresser, Document Preparer, and Telephone Quotation Clerk,

all unskilled jobs, sedentary exertion, with an SVP of 2.[2]  Tr. 31. The vocational expert also testified that adding "occasional handling, fingering, and reaching" to the hypothetical would eliminate these jobs because "[i]n most instances," if the person is being paid to perform while sitting, the person would need to be able to use their hands.  Also, if the person needed to be away from their duty station 20 percent of the time, that would also eliminate these jobs.[3]  Tr. 68-69.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from June 17, 2012, through the date of" the ALJ's decision.  Tr. 32.

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of two means "[a]nything beyond short demonstration up to and including 1 month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Id.  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3]  The ALJ noted in the decision and in response to Dr. Hosey's opinion, that "[l]imiting the claimant to occasionally pushing and pulling is consistent with the findings of mild carpal tunnel syndrome, her level of treatment which is injections and bracing at night, her activities of daily living and the need to avoid repetitive reaching which is reflective by a finding of only occasional pushing and pulling with upper extremities." Tr. 29.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[4]

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C.

§ 423(a)(1)(A); <u>Moore v. Barnhart</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of Health & Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[5]

5.  Do the individual's impairments prevent other work?

_____

[5]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment"* describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-40; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to

the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996).  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC. *See supra* at 9 n.5.

A treating physician's opinions that a claimant is unable to work and necessarily disabled would not be entitled to any special weight or deference, however.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

## IV. Medical and Other Evidence

The ALJ determined that Plaintiff had several severe impairments including fibromyalgia, disorders of the spine, carpal tunnel syndrome, and obesity.[6]  Tr. 22.  No exception is taken to these findings.

The ALJ begins the RFC discussion with a summary of Plaintiff's hearing testimony.  Tr. 24-25.  The ALJ determined that her

> statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible as they simply are not borne out in the medical record.  Specifically, the claimant is generally credible regarding her overall inactivity, but the testimony regarding a medical need for daily naps and severely limited use of her hands is in no way support in the medical record.

---

[6]  The ALJ considered the patient records of Plaintiff's treating physicians who diagnosed and/or formed impressions that Plaintiff had fibromyalgia.  These physicians include Drs. Hosey, Dandapani, a neurologist, and Pachaidee, a rheumatologist. Tr. 25-28.  The Social Security Administration adopted Social Security Ruling (SSR) 12-2p to provide guidance on how evidence is developed to establish that a person has a medically determinable impairment of fibromyalgia.  SSR 12-2p, 2012 SSR LEXIS 1, at *1 (July 25, 2012).  This SSR has been discussed in numerous opinions.  *See, e.g.*, Johnson v. Colvin, No. 1:14cv149-WS/CAS, 2016 U.S. Dist. LEXIS 55388, at *35-38 (N.D. Fla. Mar. 26, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27, 2015).  Without reference to SSR 12-2p, the ALJ determined that Plaintiff's severe impairments included fibromyalgia.  Tr. 22.  The ALJ ultimately determined that Plaintiff's medically determinable impairments, including fibromyalgia, "could reasonably be expected to cause some of [Plaintiff's] alleged symptoms," but that her statements concerning these symptoms were "not entirely credible as they simply are not born out in the medical record."  Tr. 25.  *See* Land v. Astrue, No. 5:09cv369/SPM/MD, 2011 U.S. Dist. LEXIS 21694, at *22-24 (N.D. Fla. Jan. 6, 2011) (affirming Commissioner's denial of disability benefits despite treating rheumatologist's impression of fibromyalgia), *adopted*, 2011 U.S. Dist. LEXIS 21773 (N.D. Fla. Mar. 3, 2011).  In Land, the ALJ determined that giving the claimant the benefit of the doubt, the claimant had fibromyalgia and it was severe.  2011 U.S. Dist. LEXIS 21694, at *22.  The ALJ, however, did not credit the claimant's subjective complaints of disabling pain and determined that her fibromyalgia was not so severe as to be disabling from any work. *Id.* at *22-24.  No error was shown.  *Id.*

Tr. 25.  The ALJ returns to a discussion of Plaintiff's testimony toward the end of the RFC determination.  Tr. 29; *see infra* at 22-23.

The ALJ begins an extensive review of the medical records beginning with x-rays of Plaintiff's lumbar spine done in November 2010 revealing mild lumbar spondylosis changes at L4-5 and at L5-S1, and x-rays done in December 2011, which revealed "transitional anatomy with partial fusion at L5 to S1 on the left is suspected [,] which can be associated with pain." Tr. 25, 1049, 1053.

On September 12, 2011, Plaintiff had a follow-up appointment with Bhuvaneswari Dandapani, M.D., a neurologist, who noted that Plaintiff's electrodiagnostic test showed mild bilateral carpal tunnel syndrome and mild peroneal neuropathy without any evidence of peripheral neuropathy. He opined that the symptoms were suggestive of fibromyalgia, but Plaintiff had full strength in all extremities; full range of motion in her neck; and full strength and tone in all limbs.  There were no signs of inflammation in her joints and her gait was normal; mood and affect were also normal.  Tr. 25, 891-92.

Plaintiff had a follow-up appointment with Dr. Dandapani in August 2012 complaining of, in part, "extreme pain in every part of her body," "had headaches, memory problems and dry mouth," "was depressed and

anxious," and "had panic attacks."[7]  She was "having left arm pain and left

leg pain"; "[h]er left side of the face also gets numb" and she was "unable to

sleep on left side of her body."  Tr. 1307.  "She saw Dr. Pachaidee who

found her to have a fibromyalgia exacerbation" and taking Cymbalta,

Flexeril, Ativan, Tramadol in addition to Fioricet and Requip, although the

latter made her gain weight.  She was depressed and anxious.  *Id.*

Nevertheless, she "was well groomed," "very tender in her arms," "was fully

oriented and her recent and remote memory was intact.  Her attention span

and concentration were normal.  She appeared slightly depressed.  [She]

had full strength in all extremities and, again, [her] gait was normal."  Tr. 25

(citation omitted); *see* Tr. 1308-09.

On July 12, 2012, Plaintiff had a follow-up appointment with Damani

Hosey, M.D.  Tr. 25, 834-35.  (Plaintiff was examined and treated by

Dr. Hosey for many years.  *See, e.g.*, Tr. 768 (Feb. 4, 1999, patient

record)).  Plaintiff reported having headaches almost every day; she had

fibromyalgia pain and was fatigued.  Her neurological and mini mental

status exams were normal.  At follow up visits with Dr. Hosey, Plaintiff

reported neck and back pain.  Tr. 25.

---

[7]  Plaintiff's alleged onset date is June 17, 2012.  Tr. 20.

On September 17, 2012, Dr. Hosey recommended that Plaintiff consider trying yoga or acupuncture and to engage in regular exercise. Objective results were relatively normal.  Tr. 25, 1302.  On October 29, 2012, Plaintiff reported increasing anxiety and depression, her headaches were worsening, and she reported being tired.  Objective results were relatively normal.  Dr. Hosey note that he spent 60 minutes with Plaintiff of which "50 of those minutes were spent counseling her."[8]  Tr. 25, 1299-1300.

On September 25, 2013, Plaintiff had a follow-up appointment with Dr. Hosey and related generalized myalgias and widespread pain concentrated in her cervical spine, upper extremities, and low back.  Tr. 27, 1615-16.  Her weight was down to 282 pounds; her muscle strength, sensation, and deep tendon reflexes were normal.  Dr. Hosey recommended that she engage in a low intensity exercise program.  *Id.*

From July 16, 2012, until June 21, 2013, Plaintiff met with Sukanya Pachaidee, M.D., a rheumatologist.  Tr. 26.  On July 16th, Dr. Pachaidee noted that a recent nerve conduction study did not support a diagnosis of peripheral neuropathy and that all rheumatoid factor studies were negative.

---

[8]  Later in the decision, the ALJ refers to Dr. Hosey's April 4, 2013, RFC assessment and a June 6, 2014, letter stating that Plaintiff's physical abilities had diminished with mild deterioration since the last physical assessment done in July 2013. Tr. 28-29.

Tr. 27, 831-33.  Plaintiff reported diffuse muscle and joint pain; she weighed 313 pounds and stood five feet, seven and one half inches tall. Her affect was appropriate and her mood was euthymic; she had positive tender points for fibromyalgia, but less in intensity, the straight leg raise was negative, and her hands were without synovitis.  Tr. 833.  On December 3, 2012, Plaintiff reported to Dr. Pachaidee left hip pain, but less than diffuse muscle pain and more joint pain.  Tr. 26, 1545.  Her fibromyalgia was stable and she was continued on Lyrica and Cymbalta. Tr. 26, 1547.  Plaintiff reported that physical therapy and anti-inflammatories did not help.  Her affect was appropriate and her mood was euthymic, she had less pain at the tender points with no hand or feet synovitis, and normal range of motion and hips, although she was tender and had weakness in the left hip.  The straight leg raise was negative and no effusion in the knees.  Plaintiff was prescribed Tylenol #3 and advised to exercise.  *Id.*  On June 21, 2013, Dr. Pachaidee noted Plaintiff's affect was appropriate and her mood was euthymic; there was pain on fibromyalgia tender points, but no hand or foot synovitis, normal range of motion in her hips, and straight leg raise was negative.  She had no effusion in her knees, continued on her medication, and encouraged to exercise.  The impressions included that fibromyalgia was worse when she was not taking

her medications.  She was continued on Lyrica and Cymbalta and Tramadol as necessary.  Tr. 1637-39.

An abdominal ultrasound done on July 16, 2012, revealed Hepatosplenomegaly with fatty liver.  Tr. 26, 824.  On September 4, 2012, electromyography revealed mild bilateral carpal tunnel syndrome affecting sensory conduction only.  "The left side is slightly more affected compared to the right side.  The remainder of the nerve conduction studies in the arms were normal."  Tr. 26, 1305.

On September 12, 2012, Plaintiff consulted with Edward W. St. Mary, M.D., with concerns regarding carpal tunnel syndrome (she had been seen in the past for this issue) and specifically with her hands.  She had no triggering or popping of the fingers.  Tr. 26, 1303-04.  Plaintiff had mild swelling in her hands, but no atrophy and she had full range of motion in her fingers.  Dr. St. Mary advised Plaintiff that her morbid obesity was causing pressure on the nerve at her wrist and was advised to wear braces at night and receive steroid shots; Plaintiff was advised to follow up as necessary.  The impression was mild carpal tunnel syndrome.  *Id.*

On June 21, 2013, Plaintiff consulted Kenneth Tieu, M.D., for a bariatric surgery evaluation.  She was trying to increase her daily activity, but was limited by pain.  Tr. 26.  On August 16, 2013, Dr. Tieu noted that

Plaintiff's physical examination was generally normal.  Tr. 1727.  On October 21, 2013, Plaintiff presented for a bariatric surgery evaluation. Tr. 1729.  She says she had made poor food choices because she had houseguests, but was walking and using bando, a form of martial arts.  *Id*. It was suggested that Plaintiff reduce her weight to 273 pounds before proceeding with sleeve gastrectomy.  Tr. 26, 1729.

On July 24, 2013, Plaintiff had an MRI of her cervical spine with some spurring seen; no fracture, blastic or destructive lesion evident; loss of height of the C5-6 and C6-7 disc spaces with degenerative changes. Tr. 26-27, 1578.

On August 15, 2013, Plaintiff consulted with Paul M. Keller, M.D., an orthopedic surgeon.  Tr. 27, 1579, 1582.  She related having pain in every area of the paraspinal muscles.  Examination showed that Plaintiff was able to stand on her toes and heels without difficulty, had full strength in deep tendon reflexes and motor strength testing, but decreased sensation in the left medial and lateral foot.  Tr. 1582.  Dr. Keller diagnosed disc disease of the cervical spine; mild to moderate spinal stenosis at C-5 and C-6-7 with central disc herniation, small at C3-4.  Tr. 1584.  Dr. Keller recommended pain management and advised that he would only consider surgery if non-

surgical modalities, including an exhaustive attempt at pain management, failed.  Tr. 1583-84.

On August 16, 2013, Plaintiff consulted José A. Alvarez, M.D., a pain specialist.  Tr. 27, 1617.  She reported "with a history of small trouble pain complaints," with her symptoms becoming worse over the past two years. Tr. 1617.  She was in no distress, had no tenderness in her neck, and the thoracolumbar flexion was not painful and was not restricted.  Plaintiff had full strength in all extremities, although there were spasms in the cervical spine.  Increased pain was noted with cervical spine rotation and muscle spasms were noted in the lumbar spine.  Straight leg raise was positive and Plaintiff had 12/18 tender points consistent with fibromyalgia.  Her mood was depressed and Dr. Alvarez advised her to exercise and he recommended cervical injections.  Tr. 27, 1619-20*.*  On September 25, 2013, Plaintiff returned to Dr. Hosey.  *See supra* at 17.

At this point in the decision, the ALJ reviewed the reports of DDS consultants.

> On October 4, 2012, James Levasseur, Ph.D., who is a consultant for DDS, reviewed the medical evidence of record and concluded the claimant had a non-severe anxiety disorder manifest by mild difficulties in activities of daily living, social functioning and concentration, persistence and pace (Ex. 1A).  Significant weight is accorded to this opinion because it is consistent with not only the medical evidence of record, but the claimant's ability to manage her

household, home school her children and attend to her medical, legal and financial affairs.

\*\*\*\*

On December 12, 2012, Keith Bauer, Ph.D., who is a consultant for DDS, reviewed the medical evidence of record and concluded the claimant has non-severe anxiety and affective disorders manifest by mild difficulties in activities of daily living, social functioning and concentration, persistence and pace (Ex. 4A). Again, significant weight is accorded to this opinion because it is consistent with the medical record as well as the claimant's ability to manage her household, home school her children and attend to her medical, legal and financial affairs.

\*\*\*\*

On December 17, 2012, Debra Troiano, M.D., who is a consultant for DDS, reviewed the medical evidence of record and concluded the claimant could perform a reduced range of light work (Ex. 4A). Significant weight is accorded to the finding that the claimant's impairments are not work preclusive, but the undersigned has eroded the finding of limitations to sedentary based on the record as a whole.

Tr. 27-28, 88-97, 100-12.[9]

On March 6, 2014, Plaintiff participated in a biopsychosocial evaluation with David Kranson, M.A., at Meridian Behavioral Healthcare, Inc. Tr. 27-28, 1585-89. "[S]he came to Meridian with a self-referral. She

---

[9] "On October 2, 2012, a clinician from Melbourne Internal Medicine Associates completed a form stating that the claimant did not have a mental impairment that significantly interfered with her daily functioning. The clinician wrote that no medication had been prescribed to treat a mental impairment (Ex. 6F). Only partial weight may be accorded to this opinion as the record shows that the claimant received psychotropic medications for depression, anxiety and pain." Tr. 27, 1290-94.

stated that she is here to find out what she wants to do with the rest of her life." Tr. 1585. The ALJ noted:

> The claimant reported that her husband had been unfaithful on two occasions. She said her husband did not provide for the family when she was injured. The claimant said she was considering a divorce. The claimant said she had suffered from depression and anxiety most of her life. The claimant said she enjoyed music, reading, crafts and scrapbooking. The claimant was appropriately dressed and groomed. Her thought process was goal directed and logical. Her mood was euthymic. Her memory was intact. The claimant expressed a loss of interest in day-to-day activities and events, but no deficits in activities of daily living were noted. Mr. Kranson diagnosed a depressive disorder, not otherwise specified, and a generalized anxiety disorder. He assigned a GAF score of 55. (Ex. 14F). Partial weight is accorded to this opinion from an unacceptable medical source. Significant weight is accorded to the diagnosis of depression and anxiety because the diagnoses are consistent with the record as a whole. No weight is accorded to the GAF score of 55, which indicates moderate symptoms, because the GAF score is inconsistent with the claimant's presentation at most medical appointments and it is inconsistent with the lack of consistent mental health treatment.

Tr. 27-28 (footnote omitted); *see* Tr. 1585-89.

As noted herein, *see supra* at n.8, Dr. Hosey completed an RFC assessment on April 4, 2013, Tr. 1569-76, and provided a letter on June 6, 2014, Tr. 1806, describing Plaintiff's condition. The ALJ summarized the assessment and letter.

> On April 4, 2013, Dr. Hosey completed a residual functional capacity assessment wherein it was noted that the claimant had several symptoms including widespread pain, joint pain and/or stiffness, impaired sleep, chronic fatigue and positive tender points. Dr. Hosey said the claimant experienced cognitive or memory problems,

periods of confusion, depression and anxiety.  Dr. Hosey opined that the claimant's experience of pain was constantly severe enough to interfere with attention and concentration.  He opined that the claimant was constantly limited in the ability to deal with work stress.  Dr. Hosey reported that the claimant took several medications, which caused dizziness and drowsiness; that she could lift and carry less than 10 pounds; stand and walk for less than two hours out of an eight-hour workday and could sit for less than six hours out of an eight-hour workday; occasionally stoop but could not perform any of the remaining postural maneuvers.  Dr. Hosey opined that the claimant could not work (Ex. 11F).  No weight is accorded to the general opinion that the claimant cannot work as that is an opinion reserved to the Commissioner.  Only minimal weight is accorded the work preclusive limitation of an inability to deal with work stresses as that is not supported in the treatment notes.  Additionally, objective imaging studies, laboratory studies, and clinical evaluations, which support a finding that the claimant's symptoms are only mild to moderate in severity, simply do not support findings suggestive of any inability to perform a restricted level of sedentary work as the record clearly reveals continued recommendations to exercise as well as activities of daily living beyond the limitations found in the opinion.

On June 6, 2014, Dr. Hosey wrote a letter stating that the claimant's physical abilities had diminished with mild deterioration since the last physical assessment done in July 2013 (Ex. 17F).   Little weight is accorded to this opinion because the treatment records support a finding that the claimant's symptoms are stable and she had been actively making efforts to lose weight in hopes of having bariatric surgery.  When the claimant consulted a therapist in March 2014, she barely mentioned her physical problems, which is consistent with the finding that her symptoms are stable and controlled with medication and treatment.  Even if the finding of "mild deterioration" were accepted, it would not support a finding that the claimant could not handle or finger at all.  Limiting the claimant to occasionally pushing and pulling is consistent with the findings of mild carpal tunnel syndrome, her level of treatment which is injections and bracing at night, her activities of daily living and the need to avoid repetitive reaching which is reflective by a finding of only occasional pushing and pulling with the upper extremities.

Tr. 28-29 (footnote omitted); *see* Tr. 1569-76, 1806.

After discussing the medical evidence, the ALJ refers to a September 24, 2012, function report completed by Plaintiff's mother-in-law for which the ALJ accorded "[l]ittle weight" "to this lay opinion because the reported symptoms and limitations are inconsistent with the claimant's ability to homeschool her children, manage the household, drive and shop in stores." Tr. 29, 208-16.  Plaintiff's mother-in-law also completed an anxiety questionnaire that was supportive of Plaintiff's claim of anxiety attacks and inability to think clearly or function physically while having an anxiety attack. The ALJ gave this questionnaire "little weight," having considered it a lay opinion "because the reported symptoms are inconsistent with the claimant's own reports to the medical personnel."  Tr. 29, 217-19.  The ALJ refers to another function report completed by Plaintiff's mother-in-law on December 5, 2012, reporting on several of Plaintiff's daily activities including needing help caring for her hair and shaving, that she could prepare simple meals and could drive, could go out alone, and occasionally shops for groceries.  "Minimal weight is accorded to this lay opinion because some of the reported activities are consistent with the record as a whole."  Tr. 29, 248-55.

The ALJ returns to Plaintiff's hearing testimony:

The claimant testified that she home schools her children and the record establishes that the claimant shops in stores, drives, and engages in crafts. The claimant told one physician that she hosted houseguests in October 2013; she testified that she assisted with and attended a wedding in 2014; she testified that she walks for exercise. The claimant told her bariatric surgeon that she was walking for exercise and engaging in bando. The claimant testified that she has limited use of her hands, but yet she told a therapist in March 2014 that she enjoyed crafts and scrapbooking. These activities of daily living are consistent with the finding that the claimant can perform a reduced range of sedentary work.

Tr. 29.

The ALJ then summarizes several findings:

The claimant sees a primary care physician, a rheumatologist, a neurologist and a bariatric surgeon. The objective imaging studies, laboratory studies and clinical evaluations from these physicians establish that the claimant's symptoms are controlled with medication and treatment and that she is finally making progress toward losing weight in order to have bariatric surgery performed, for which she is to be commended as it is recognized that weight loss if [sic] very difficult. The claimant testified that she has suffered from paralysis from the waist down, however, there is no support for that statement in the treatment records. The claimant said she naps several times a day and there is the notation from Dr. Hosey that some of the prescribed medications cause drowsiness, but daily napping is inconsistent with the claimant's testimony that she home schools her children as well as the reported side-effects of her medications as drowsiness and a medical need for lengthy daily naps is not quite the same report. Additionally, there is no evidence that the claimant reported this alleged malady to her physicians. The claimant related having neuropathy in her legs, but there are no electrodiagnostic studies that support that allegation. The claimant's gait was normal at most medical appointments.

The claimant admitted that she is inconsistent with her medication regimen as she said she would rather endure pain than become an addict. The undersigned respects the claimant's decision to forego

the use of narcotic pain medications, but notes that this also supports the finding that her pain is manageable and is not a reason to find that she cannot perform any work found in significant numbers in the national economy. In sum, the medical evidence of record supports a finding that the claimant can perform a reduced range of sedentary work.

Regarding the claimant's mental impairments, she occasionally mentioned depression and anxiety to her treating physicians; however, she did not seek treatment for mental health problems until March 2014. The claimant manages her household, homeschools her children and manages her medical affairs. These factors support the finding that her mental impairments are non-severe.

Tr. 29-30.

## V. Legal Analysis

Plaintiff argues that she is disabled and not "able to be gainfully employed with [her] limitations." ECF No. 17 at 1. Plaintiff takes issue with the ALJ's frequent reference to Plaintiff's abilities to manage her household, homeschool her children, and attend to her medical, legal, and financial affairs, drive, and shop in stores, but argues that the ALJ "blatantly disregarded all the documentation on file and [her] testimony" that showed to the contrary. *Id.* For example, Plaintiff refers to her "getting lost" when she tries to go out by herself. She has had to call and get directions or find out where she was supposed to be going. *Id.* at 2. Plaintiff states that her husband has been more responsible for home schooling the children. Her husband tries to make her drive when they go out together to enable her to

remain or stay sharp.  But, she gets confused.  Plaintiff also states that her husband helps her with daily activities and is "now overseeing, taking over, or in charge of our affairs."  *Id.*  Plaintiff refers to a form filled out by her "mother-in-law that shows [her] husband started having to review things. Yes, I could still 'handle' the financial affairs with [her] husband's review. Exhibit 7E, 12E."  ECF No. 17 at 2-3.

In essence, Plaintiff argues that her ability to concentrate and sometimes confused state of mind was ignored by the ALJ and implicitly argues that the ALJ erred determining that she has *mild* limitation in the functional area of concentration, persistence, or pace and in finding, in his RFC determination, that she can perform sedentary work, with restrictions. Tr. 23.  Plaintiff argues that "[t]he ALJ ignored substantial evidence of record to reach a conclusion that was not supported."  ECF No. 17 at 3.[10]

---

[10]  The Commissioner notes that "although '[*p*]*ro se* pleadings are held to a less stringent standard and pleadings drafted by attorneys and will, therefore, be liberally construed . . ., [i]ssues not addressed in a *pro se* litigants initial brief are deemed abandoned.'"  Jones v. Comm'r of Soc. Sec., 611 F. App'x 541, 544 (11th Cir. 2015) (internal citation and quotation marks omitted)."  ECF No. 20 at 5 n.2.  The Commissioner suggests "[o]ther than her arguments about the ALJ's evaluation of her testimony, Plaintiff does not appear to contest the ALJ's decision.  Plaintiff, therefore, has waived any other arguments regarding the ALJ's decision."  *Id.* (reference to Order, ECF No. 16, omitted).

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988).  After considering a claimant's complaints of pain, an ALJ may reject them as not credible.  *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).  If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility.  *See* Wilson v. Barnhart, 284 F.3d 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id*.

Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that he is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a).

Pain is subjectively experienced by the claimant, but that does not mean that only a mental health professional may express an opinion as to the effects of pain.  One begins with the familiar way that subjective complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a

> three-part test showing: (1) evidence of an underlying medical
> condition; and (2) either (a) objective medical evidence
> confirming the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225. *See* 20 C.F.R §§ 404.1529 (explaining how

symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total

limiting effects).[11]

An ALJ may credit subjective pain testimony even if objective

evidence is lacking. But this is merely permissive guidance. It does not

mandate belief in the subjective testimony where the substantial evidence

in the record indicates otherwise. After all, in making the credibility finding,

the ALJ is directed to articulate the findings based upon substantial

evidence. Substantial evidence may consist of objective medical findings,

a lack of other objective medical findings, evidence of exaggeration,

inconsistencies in activities of daily living, failure to pursue recommended

physical therapy or to take prescribed medications, and the like.

The ALJ considered the evidence and found that Plaintiff's

> medically determinable impairments could reasonably be expected to
> cause some of the alleged symptoms; however, the [Plaintiff's]
> statements concerning the intensity, persistence and limiting effects
> of these symptoms are not entirely credible as they simply are not

---

[11] Although the ALJ did not expressly refer to the three-part part standard, it is
clear that the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 24,
indicate that the pain standard was applied. Wilson, 284 F.3d at 1226.

> born out in the medical record. Specifically, the [Plaintiff] is generally credible regarding overall inactivity, but the testimony regarding a medical need for daily naps and severely limited use of her hands is in no way supported in the medical record.

Tr. 25.[12]

In assessing Plaintiff's credibility, the ALJ considered Plaintiff's activities of daily living, Plaintiff's testimony, function reports, and information supplied by Plaintiff's mother-in-law in light of the medical evidence, which included Plaintiff's reports and non-reports of maladies and health-related issues. Tr. 24-25, 29-30. In part, the ALJ discusses Plaintiff's testimony and provides his credibility findings. *See supra* at 25-26; *see also* Tr. 29-30. Substantial evidence supports the ALJ's credibility findings.

Clinical examinations from shortly before Plaintiff's alleged onset date of June 17, 2012, thereafter did not reveal abnormalities to support Plaintiff's allegations of disabling limitations, particularly for any consecutive 12-month period. *See, e.g.*, Tr. 25-29, 601, 833-38, 841-42, 845, 847, 850, 852, 859, 863, 866, 869, 872, 874, 877, 879, 881-82, 886-87, 1300, 1302-03, 1308-09, 1311-13, 1315, 1317, 1523-24, 1530-31, 1547, 1550, 1554,

---

[12] The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i). *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

1582-83, 1586-87, 1599-1600, 1611, 1616, 1619-20, 1622, 1626-27, 1630-32, 1638-39, 1641, 1677-78, 1723, 1727, 1731, 1736, 1740, 1744. Diagnostic studies, including x-rays, MRI scans, CT scans, ultrasounds, electrocardiograms, a cardiac catheterization, electromyography, colonoscopy, a bone density test, and nerve conduction studies also did not reveal significant abnormalities.  Tr. 25-29, 603-05, 609-21, 628-61, 773-74, 776-78, 72-84, 824, 829, 831, 1037-51, 1303, 1305-06, 1314, 1513, 1626-28, 1532-40, 1545, 1548, 1552, 1565-66, 1577-78, 1583, 1597-98, 1607-09, 1617-18, 1706, 1748-68, 771-74, 1793-1800.

The objective medical findings undermine Plaintiff's allegations of disabling limitations and provide substantial evidence to support the ALJ's determination that Plaintiff's subjective complaints were not entirely credible.  Tr. 26-30.  Plaintiff's treatment history also indicates that her condition was not as limiting as she alleged.  *Id.*

Plaintiff had carpal tunnel release surgery in April 2013, but otherwise her treatment primarily consisted of medication and she was advised to exercise and lose weight.  Plaintiff's conservative treatment provides additional evidence that her condition was not of disabling severity. Moreover, Plaintiff's treatment history indicates that her medication

generally controlled her alleged symptoms, which further undermines her subjective complaints of symptoms.  Tr. 29.

As noted above, and contrary to Plaintiff's arguments, the ALJ also properly considered her activities in evaluating her subjective complaints of disabling symptoms.  Tr. 23-25, 29-30.  Although not dispositive, the claimant's activities may show the claimant's symptoms are not as limiting as alleged.  *See supra* at n.12.

Although Plaintiff takes issue with the ALJ's findings regarding her ability to function on a daily basis, the record indicates that Plaintiff handled her personal needs, socialized with family members, home-schooled her children, went shopping, drove, engaged in crafts, and managed her medical, legal, and financial affairs.  *See, e.g.*, Tr. 23-25, 29, 44-45, 49, 50-54, 222-28, 251-66.  Plaintiff minimizes what she did, but her activities are not indicative of the disabling limitations she alleged.  Contrary to Plaintiff's argument, the ALJ did not unduly rely on Plaintiff's activities in deciding her claim nor did the ALJ find Plaintiff's activities to be dispositive evidence of her ability to work.  Rather, the ALJ considered Plaintiff's activities in conjunction with the other evidence.  *See* 20 C.F.R. § 404.1529(c)(3)(i); Dyer, 395 F.3d at 1212; Macia, 829 F.2d at 1012.

Further, the opinions of Drs. Levasseur and Bauer, the state agency psychological consultants, and Dr. Troiano, the state agency medical consultant, also support the ALJ's credibility determination.  Tr. 27-28, 91-92, 106-07.  *See* 20 C.F.R. § 1527(e)(2)(i).  Drs. Levasseur and Bauer concluded in October and December 2012, respectively, that Plaintiff's mental impairments were not severe.  Tr. 91-92, 106-07.  Dr. Troiano concluded in December 2012 that Plaintiff could perform a wide range of light work.  Tr. 108-10.  *See* 20 C.F R. § 404.1567(b) (defining light work).

Although Drs. Levasseur, Bauer, and Troiano did not examine Plaintiff and review all the evidence, the ALJ reviewed all the relevant evidence and their opinions are supported by the objective medical evidence and are consistent with the record as a whole, including the evidence submitted after they issued their opinions.  Tr. 25-30.  *See* 20 C.F.R. § 404.1567(c)(3), (c)(4).  The record provides substantial evidence to support the ALJ's decision to give significant weight to the opinions of Drs. Levasseur and Bauer that Plaintiff's mental impairments were not severe, a point not contested by Plaintiff.  Tr. 22-23, 27, 92, 107.

Substantial evidence also supports the ALJ's decision to give significant weight to Dr. Troiano's opinion, although the ALJ gave Plaintiff

the benefit of the doubt and limited her to a wide range of sedentary work. Tr. 24, 28, 108-10.  The ALJ properly considered the opinions of Drs. Levasseur, Bauer, and Troiano together with the other evidence in evaluating the credibility of Plaintiff's subjective statements in assessing her RFC.  Tr. 24-30.  *See* 20 C.F.R. §§ 404.1512(b), 404.1513, 404.1527, 404.1529(c)(3), 404.1545(a)(3).

As noted by the Commissioner, the record includes the opinions of Dr. Hosey that are summarized by the ALJ during his RFC analysis.  Tr. 25, 28-29, 1569-76, 1806; *see* ECF No. 20 at 12 n.7.  These records include Dr. Hosey's April 4, 2013, opinion (RFC assessment) and conclusion that Plaintiff could not work.  Tr. 28, 1575-776.  The ALJ also referred to Dr. Hosey's letter of June 6, 2014, stating that Plaintiff's abilities had diminished with mild deterioration since the last physical assessment done on July 9, 2013.  "Deterioration most noted in upper extremities due to pain and decline in motor function."  Tr. 28, 1806.  The ALJ accorded this opinion "[l]ittle weight"

> because the treatment records support a finding that the claimant's symptoms are stable and she had been actively making efforts to lose weight in hopes of having bariatric surgery.  When the claimant consulted a therapist in March 2014, she barely mentioned her physical problems, which is consistent with the finding that her symptoms are stable and controlled with medication and treatment. Even if the finding of "mild deterioration" were accepted, it would not support a finding that the claimant could not handle or finger at all.

> Limiting the claimant to occasionally pushing and pulling is consistent with the findings of mild carpal tunnel syndrome, her level of treatment which is injections and bracing at night, her activities of daily living and the need to avoid repetitive reaching which is reflective by a finding of only occasional pushing and pulling with the upper extremities.

Tr. 28-29. The ALJ considered the patient records and opinions of Plaintiff's treating physicians, including Dr. Dandapani, a neurologist, Dr. Pachaidee, a rheumatologist, Dr. Keller, an orthopedic surgeon, and Dr. Alvarez, a pain specialist, and implicitly determined that their records did not support Plaintiff's claim of disabling limitations.[13] Tr. 25-27.

Substantial evidence supports the ALJ's consideration of the opinions of Plaintiff treating physicians, including the opinions of Dr. Hosey's regarding his perceptions of Plaintiff's limitations.

Plaintiff did not meet her burden of proving that her condition caused disabling limitations. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir.

---

[13] Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1517(c)(2), (5); *see* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that "[s]pecialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community," thus rheumatologists' opinions are entitled to greater weight than those of other physicians) (Benecke quoted in Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished)). Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

2003).  The ALJ considered the relevant evidence in performing his duty as the trier of fact in weighing and resolving any conflicts in the evidence. Phillips, 357 F.3d at 1240 n.8.  Substantial evidence supports the ALJ's credibility determination and assessment of Plaintiff's RFC and Plaintiff did not prove that she had additional disabling limitations.  *See* Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").  Plaintiff also did not meet her burden of proving that she could not perform the jobs identified by the vocational expert.  Tr. 31, 67-68.  Jones v. Apfel, 190 F.3d at 1228.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on June 16, 2017.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**